# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00884-COA

**DAVID GOVERO A/K/A DAVID IVAN GOVERO**              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2019 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN DAVID GOVERO (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/15/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     David Govero was convicted by a jury of unlawful possession of a firearm or weapon by a felon in the Harrison County Circuit Court.  The court sentenced him as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015) to serve eight years in the custody of the Mississippi Department of Corrections.  Govero appeals, claiming that (1) his constitutional rights were violated during the course of an investigative stop and arrest; (2) the jury was not impartial; and (3) his counsel was ineffective.  Finding no error,

we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On March 16, 2018, Officer Todre Clopton of the Biloxi Police Department started his patrol working the night shift. During his patrol, Officer Clopton observed Govero in the driver's seat of his car that was stopped in the middle of the road. Officer Clopton testified at trial that Govero "was . . . blocking both lanes [and] obstructing . . . traffic." As Officer Clopton approached, Govero exited his vehicle, grabbed an air compressor, and started pumping air in a back tire. Govero told Officer Clopton that his tire was low and that he was having problems with his car "shaking." Officer Clopton testified that the tire did not appear low.

¶3. Officer Clopton then asked Govero if he had a driver's license and insurance. Govero responded that he did not. He asked Govero if he had any weapons on his person. Govero answered that he had a knife. At that point, Officer Clopton patted-down Govero, and he "immediately" felt metallic knuckles[1] in Govero's back-right pant pocket. Govero then advised Officer Clopton that he was a felon. As a result, Officer Clopton arrested Govero for unlawfully possessing the metallic knuckles as a felon.

¶4. A grand jury indicted Govero as a habitual offender on October 29, 2018. A trial was held on April 16-17, 2019. The State presented two witnesses: Officer Clopton and Kris Hines. Hines, the criminal investigator at the time Govero was arrested, testified that he interviewed Govero after his arrest. Hines testified Govero admitted to knowing that he

---

[1] The metallic knuckles had a knife attachment that folded in and out.

should not have possessed the metallic knuckles as a felon. Following the State's case-in-chief, Govero moved for a directed verdict. That motion was denied. Govero presented no witnesses, and he did not testify in his defense.

¶5. After deliberating, the jury found Govero guilty of unlawful possession of a firearm or weapon by a felon under Mississippi Code Annotated section 97-37-5 (Rev. 2014). Govero was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-81 to an eight-year term to be served in the custody of the Mississippi Department of Corrections. Govero moved for judgment notwithstanding the verdict or a new trial, which was denied. Govero now appeals his conviction and sentence.

**DISCUSSION**

¶6. Govero's appellate counsel filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005). Our supreme court has stated that when appellate counsel determines the record shows no appealable issues, counsel must follow the procedures outlined in *Lindsey*. Here, we find that Govero's appellate counsel complied with those requirements. *See id.* at 748 (¶18). In particular, Govero's counsel stated that she reviewed the following: (a) "the reason for arrest and the circumstances surrounding Govero's arrest"; (b) "any possible violations of Govero's right to counsel"; (c) "the entire trial transcript and contents of the record"; (d) "all rulings of the trial court"; (e) "possible prosecutorial misconduct"; (f) "all jury instructions"; (g) "all exhibits, whether admitted into evidence or not"; (h) "possible misapplication of the law in sentencing"; (i) "the indictment and all of the pleadings in the record"; (j) "any possible ineffective assistance of counsel issues"; and (k) "whether the

3

verdict was supported by the overwhelming weight of the evidence." After finding no arguable issues, Govero's counsel then sent a copy of the *Lindsey* brief to Govero and advised him that while counsel found no arguable issues, Govero had the right to file a pro se supplemental brief. Govero filed a pro se supplemental brief, challenging his conviction and sentence. We address the issues below.

## I.     Whether there was reasonable suspicion for an investigatory stop.

¶7.     Govero first argues by supplemental briefing that Officer Clopton lacked probable cause or reasonable suspicion to approach his vehicle. In particular, he claims that the stop was unconstitutional because he was not issued a citation for obstructing the roadway. He further argues that because there was no reasonable suspicion, he was subjected to an illegal investigatory stop and arrest. On that basis, Govero contends that the fruits of the stop are inadmissible. "The standard of review for admission of evidence in a criminal case is abuse of discretion." *Harris v. State*, 731 So. 2d 1125, 1130 (¶29) (Miss. 1999).

¶8.     The Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution provide that an individual has the right to be free from unreasonable searches and seizures. *Dies v. State*, 926 So. 2d 910, 917-18 (¶21) (Miss. 2006). However, "[a]n officer may make a brief, investigatory stop of a vehicle if the officer has reasonable suspicion to believe that the occupants of the vehicle have been, are currently, or are about to be involved in criminal activity." *Martin v. State*, 240 So. 3d 1047, 1050 (¶9) (Miss. 2017); *accord United States v. Hensley*, 469 U.S. 221, 227 (1985); *Dies*, 926 So. 2d at 918 (¶22); *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 114 (¶16) (Miss. 1999). The

4

suspicion must be "grounded in specific and articulable facts . . . ." *Eaddy v. State*, 63 So. 3d 1209, 1213 (¶14) (Miss. 2011) (citing *Walker v. State*, 881 So. 2d 820, 826 (Miss. 2004)); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968).

¶9. "Grounds for reasonable suspicion to make an investigatory stop generally comes from two sources: either the officer's personal observation or an informant's tip." *Eaddy*, 63 So. 3d at 1213 (¶15) (internal quotation marks omitted) (citing *Williamson v. State*, 876 So. 2d 353, 355 (Miss. 2004)). "But the scope of an investigatory stop is limited." *Martin*, 240 So. 3d at 1051 (¶10). "The scope of the seizure must relate to the initial circumstances that called for police action." *Id.* (citing *Haddox v. State*, 636 So. 2d 1229, 1234 (Miss. 1994)). "Reasonable suspicion is the standard for a stop or search based on suspicious activity that does not yet amount to criminal activity, but which compels an officer to believe that criminal activity has happened, is happening, or is about to happen." *Id.* at (¶11).

¶10. In the instant case, Officer Clopton personally observed an ambiguous situation—Govero's vehicle stopped in the middle of the road, blocking traffic. It was reasonable for Officer Clopton to investigate to see what was actually occurring. As Officer Clopton approached, he testified that Govero grabbed an air compressor and began pumping air in his back tire. This action served to further raise suspicion because the tire did not appear low. Thereafter, Officer Clopton asked Govero for his driver's license. *See* Miss. Code Ann. § 63-1-5(1)(a) (Supp. 2016) ("No person shall drive or operate a motor vehicle . . . upon the highways of the State of Mississippi without first securing an operator's license to drive on the highways of the state . . . ."). Govero admitted that he did not have a driver's

5

license.  At this point, Officer Clopton had a legal basis to arrest Govero.  Officer Clopton then asked Govero if he had any weapons on his person.  Govero replied that he did.  "When a reasonable investigatory stop is conducted, an officer is authorized to conduct a weapons search limited in scope to the discovery of concealed weapons." *Shannon v. State*, 739 So. 2d 468, 471 (¶13) (Miss. Ct. App. 1999) (internal quotation marks omitted) (quoting *Singletary v. State*, 318 So. 2d 873, 877 (Miss. 1975)).

¶11.    We hold that the seizure of the metallic knuckles was the result of a valid investigative stop.  The seized knuckles was not the fruit of an illegal arrest.  Officer Clopton executed a temporary, investigative stop that was reasonable under the circumstances.  Therefore, the circuit court did not abuse its discretion, and Govero's constitutional rights were not violated.

**II.        Whether the jury was impartial.**

¶12.    Govero argues that the make-up of the jury violated his fundamental right to a fair trial by an impartial jury.  Specifically, he claims that members of the jury pool were either current law enforcement officers or related to law enforcement officers.  "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."  U.S. Const. amend. VI; *accord* Miss. Const. art. 3, § 26.

¶13.    The record shows that there were no current law enforcement officers in the venire. It further shows that one juror's son-in-law was a former law enforcement officer in Louisiana.  Although the juror had an attenuated connection to law enforcement, Govero failed to make an objection to the selection of the juror.  Govero also failed to object to any members of the venire on the basis of their connection to law enforcement.

6

¶14. After careful review, we find no evidence substantiating Govero's argument that he was tried by an unfair or impartial jury. As such, he is not entitled to new a trial on this basis. This issue is without merit.

### III. Whether Govero's counsel was ineffective.

¶15. Finally, Govero claims that he received ineffective assistance because his trial attorney did not seek admittance of a dash-cam video into evidence. According to Govero, the dash-cam video would have contradicted Officer Clopton's testimony.

¶16. "In order to prevail on a claim for ineffective assistance of counsel, [Govero] must show: (1) that his counsel's performance was deficient, and (2) that this alleged deficiency prejudiced his defense." *Thompson v. State*, 119 So. 3d 1007, 1009 (¶5) (Miss. 2013) (internal quotation mark omitted) (quoting *Goff v. State*, 14 So. 3d 625, 655 (¶121) (Miss. 2009)). There is "a rebuttable presumption that trial counsel is competent and his performance was not deficient." *Id.* "Additionally, [Govero] must show that there is a reasonable probability that, but for the errors of his counsel, the judgment would have been different." *Id.* Whether trial counsel's performance was ineffective is based on the totality of the circumstances. *Id.*

¶17. A review of the record shows that the State admitted a video from Officer Clopton's body-worn camera at trial. The video, showing Officer Clopton's interactions with Govero, was played (and published) to the jury. The video does not contradict Officer Clopton's testimony. After our review, we cannot say that the record affirmatively shows ineffectiveness of constitutional dimensions.

7

¶18. Because there is no obvious deficiency in Govero's counsel's representation on the record before this Court and because the State has not explicitly stipulated that the record is adequate to address Govero's claims, we dismiss Govero's ineffective-assistance-of-counsel claim without prejudice. Should he choose to do so, Govero may raise his ineffective-assistance-of-counsel claims in a post-conviction proceeding.

## CONCLUSION

¶19. For the forgoing reasons, we affirm Govero's conviction and the sentence imposed by the Harrison County Circuit Court.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**